UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

SJD-CC                                              CIVIL ACTION

VERSUS                                              NO. 06-9903

MARSH, USA, INC., D/B/A Marsh                       SECTION B(4)
USA RISK SERVICES, ET AL


                         ORDER AND REASONS

    Before the Court is Defendant Marsh USA, Inc.'s Motion for Summary Judgment.  (Rec. Doc. No. 47).  After review of the pleadings and applicable law, and for the reasons that follow,

    **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

                            *BACKGROUND*

    Plaintiff SJD-CC, LLC ["SJD"] owned and leased commercial property located at 900 South Jefferson Davis Parkway in New Orleans, Louisiana.  SJD leased warehouse space at the property to tenants who required strict temperature controls.  SJD's tenants included Tulane University who stored library archives in the warehouse as well as East/West Wines who stored inventory there.

    Defendant Marsh USA, Inc. ["Marsh"] acted as SJD's insurance agent.  For the policy year April 25, 2003 to April 25, 2004, Marsh obtained from Defendant Travelers Indemnity Company of Connecticut ["Travelers"] a Boiler and Machinery insurance policy which covered SJD's property.  This policy provided limited coverage for SJD's

                                  1

loss of business income. Specifically, the policy provided coverage for "actual loss of 'business income' from a total or partial interruption of business caused solely by an 'accident' to an 'object'...." The term "object" was defined as property "[u]sed to supply electrical power, communications services, air conditioning, heating, gas, water or steam to the...premises." For the policy year April 25, 2003 to April 25, 2004, Marsh also obtained from Travelers a separate policy of property insurance and commercial general liability insurance which also covered SJD's property. This policy did not provide any coverage for loss of business income.

For the policy year April 25, 2004 to April 25, 2005, Marsh obtained from Travelers a renewal of SJD's Boiler and Machinery insurance policy. The 2004-2005 policy provided the same limited coverage for loss of business income as the 2003-2004 policy. For the policy year April 25, 2004 to April 25, 2005, Marsh again obtained from Travelers a separate policy of property insurance and commercial general liability insurance which also covered SJD's property. As in the previous year, this policy provided no coverage for loss of business income.

On April 22, 2005, Marsh sent to SJD a revised proposal for coverage for the April 25, 2005 to April 25, 2006 policy year. According to the affidavit of James L. Oertling, the Client Advisor employed by Marsh who interacted with SJD, this proposal combined into one single policy of insurance the coverages that were

previously contained separately in the property and commercial general liability policy and the Boiler and Machinery policy. A letter from Marsh attached to the proposal provided the following:

> Attached is the revised proposal for the package policy renewal for the 4/25/05-06 policy period.  The quote still contemplates the higher insured value for the building as the carrier will not come off that figure, but the pricing is still in line with the expiring pricing.
>
> The revised pricing on this years [sic] package is $21,614 v. last year's premium which was $21,239 for the package and boiler policy combined (less than 2% increase).

The revised proposal contained a section entitled "Rating Basis." Under this heading, the revised proposal stated "Rating Basis is Based on 100% Values for Blanket Locations plus Scheduled Locations Limits plus Time Element Limits."

Based on the revised proposal, Marsh, on April 22 2005, obtained an insurance policy from Travelers for the April 25, 2005 to April 25, 2006 calendar year.  Marsh claims that the policy combined the coverages previously contained in the separate commercial general liability and Boiler and Machinery policies. Although SJD paid the premium for this policy, it did not actually receive a copy of the policy at this time.  Plaintiff alleges, however, that at no time did it request any change, reduction, or elimination of coverage provided in the previous years nor was it notified by Marsh of any such reduction.

On August 29, 2005, Hurricane Katrina struck the city of New

Orleans and caused extensive wind damage to the insured property. Plaintiff alleges that the wind caused severe damage to the roof of the warehouse. Additionally, Plaintiff contends that the East/West Wines air conditioning unit located on the roof of the building was damaged by wind and required repair. As a result, East/West Wines lost all of its inventory and refused to pay rent. SJD then submitted a claim to Travelers for loss of business income resulting from the loss of rental income. Travelers denied the claim. SJD then retained the services of insurance agent John O'Brien. On October 5, 2005, O'Brien for the first time obtained a copy of the April 25, 2005 to April 25, 2006 policy and discovered that business interruption coverage was not specifically stated in the policy.

Plaintiff filed suit on October 4, 2006 alleging that Defendants Marsh and Travelers negligently misrepresented that the policy covered business interruption losses and that the policy should be reformed to cover the business interruption losses sustained by SJD. Defendant Marsh has now filed this Motion for Summary Judgment.

Defendant Marsh contends that even if the Court finds that Marsh failed in April 2005 to procure for SJD coverage for lost business income that was identical to the coverage contained in its earlier Boiler and Machinery policies, Plaintiff still cannot establish a valid claim for damage as a result of this failure. Specifically, Defendant points to language in the previous policies

4

which excluded lost business income coverage for damage caused by windstorms. Given this language, the damages Plaintiff sustained would not be covered under the policy.

Plaintiff contends that a hurricane does not constitute a "windstorm," therefore, the "windstorm" exclusion does not apply to the damages sustained by Plaintiff. Even if the exclusion does apply, Plaintiff contends that given the April 2005 proposal's reference to "time element coverage" as well as the increase in premium from $21,239 to $21,614, it was reasonable for Plaintiff to assume that the business interruption coverage, rather than being eliminated, was actually being broadened to apply to the entire 2005-06 policy.

## *DISCUSSION*

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate

that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.   Reformation of the Policy**

Defendant Marsh contends that even if the Court finds that Marsh failed in April 2005 to procure for SJD coverage for lost business income that was identical to the coverage contained in its earlier Boiler and Machinery policies, Plaintiff still cannot establish a valid claim for damage as a result of this failure. Specifically, Defendant points to the Perils Elimination Endorsement found in both the 2003-04 and the 2004-05 policies which provided the following:

> This endorsement modifies insurance provided under the following
>
> BOILER AND MACHINERY COVERAGE PART
>
> We will not pay under any coverage provided by this policy for loss caused by or resulting from an "accident" that is the direct or indirect result of:
>
> ...
> B.   Windstorm or Hail (not including rain, snow, sand or dust within a building or structure, unless the building or structure first sustains wind or hail

6

      damage to its roof or walls through which
      the rain, snow, sand or dust enters);

Defendant claims that even if the policy in force at the time Hurricane Katrina struck were reformed to conform to the 2003-04 and 2004-05 policies, given the above language found in those policies, the wind damage to the air conditioning system would still not have constituted a covered loss.  Thus, any negligence on Marsh's part could not have caused damage to the Plaintiff.

  Plaintiff makes two arguments in response to Defendant's claims.  First, Plaintiff contends that a hurricane does not constitute a "windstorm."  Plaintiff argues that the policy itself does not define the term "windstorm" and that the generally accepted definition of a windstorm is a storm with strong winds but little to no rain.  Thus, because a hurricane is often accompanied by rain, it does not qualify as a "windstorm."  The Court is not persuaded by Plaintiff's argument.  Courts in the Eastern District have held that policies containing "windstorm" exclusions exclude coverage for losses caused by hurricane wind damage.  *See e.g. Cindass v. Allstate Ins. Co.*, 2007 WL 3172111 (E.D. La. 2007).  Thus, the Court finds that the windstorm exclusion found in the previous years' policies excluded the damaged caused to the air conditioning system in the present case.

  Second, Plaintiff contends that even if the older policies excluded coverage for wind damage, there still exist genuine issues of material fact which preclude summary judgment.  Specifically,

Plaintiff contends that given the April 2005 proposal's reference to "time element coverage" as well as the increase in premium from $21,239 to $21,614, it was reasonable for Plaintiff to assume that the business interruption coverage, rather than being eliminated, was actually being broadened to apply to the entire 2005-06 policy.

An insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). Specifically, the Court's role in interpreting insurance contracts is to ascertain the common intent of the parties. *Id*. Insurance agents have a duty to supply their customers with correct information, and they may be liable for negligent misrepresentation when they provide incorrect information, and the insured is thereby damaged. *Trivic, Inc. v. Fid. and Guar. Co.*, 2007 WL 2670284 (E.D. La. 2007). As noted above, it is clear that the 2003-04 policy as well as the 2004-05 policy contained a windstorm exclusion that excluded the damage caused to the air conditioning system. Thus, even if the language of the proposal was unclear and the Court were to reform the policy to conform to the previous years' policies, the damage to the air conditioning system still would not have been covered. Additionally, while a reasonable interpretation of the proposal language may have led Plaintiff to believe it was getting the same level of coverage as in previous years, a reasonable interpretation would not have led Plaintiff to believe it was in fact obtaining

additional coverage.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.


New Orleans, Louisiana this 20th day of June, 2008.

                                              UNITED STATES DISTRICT JUDGE